# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00274-CV

---

**M. V., Appellant**

v.

**Texas Department of Family and Protective Services, Appellee**

---

### FROM THE 340TH DISTRICT COURT OF TOM GREEN COUNTY
### NO. C220030CPS-1, THE HONORABLE ELIZABETH WATKINS, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

M.V. ("Mother") appeals from the trial court's judgment appointing L.T. ("Grandmother") as managing conservator of nine-year-old L.J.V. ("Child").[1] She argues that the district court abused its discretion by declining to appoint her as managing conservator and by deviating from the standard possession order. We affirm.

## BACKGROUND

In May 2022, the Department of Family and Protective Services removed Mother's three children from her care after receiving reports of domestic violence and that she had left Child—who is autistic and nonverbal—in the care of his older siblings for days at a time. The district court appointed the Department temporary managing conservator of the three

---

[1] We refer to the parents, their child, and other family by their initials or their relation to Child. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.

children and ordered Mother to comply with the service plan drawn up by the Department. The Department placed Child with Grandmother. Later, the district court granted the Department's motion to sever Child's case from that of his siblings.

The district court called the case for trial in March 2024.[2] Mother appeared by counsel but did not attend in person. The district court heard announcements and requested the parties to discuss how to handle the case, including "anything short of termination of parental rights." After an off-the-record discussion, the Department announced that it was dropping its request for termination and asking the district court to appoint Grandmother as Child's managing conservator and Mother as possessory conservator with certain restrictions. Specifically, Mother would have supervised visitation with Child two Saturdays a month, with the visits changing to unsupervised after Mother had two negative drug tests. The Department also asked the court to order Mother to attend Child's medical appointments and medication reviews.

The district court admitted hundreds of pages of Child's hospital records, the family service plan, and Mother's positive drug test and heard testimony from the Department's caseworker. The caseworker testified that the restrictions were necessary because Mother had not shown she is a safe parent. At the time of the children's removal, Mother was unemployed, receiving food stamps, and living with a friend in San Antonio. She was not taking Child to his medical appointments and was leaving him in the care of his siblings when she went out of town. To rectify these concerns, the service plan required Mother to stay in contact with the Department, obtain employment or other means of support and provide proof to the Department,

---

[2] Mother had two other children. The eldest turned eighteen while the case was pending. On the same day as the final hearing in this case, the district court appointed Grandmother managing conservator of the other and Mother as possessory conservator. This Court affirmed that decision in cause No. 03-24-00273-CV.

2

provide a stable home with age-appropriate beds and bedding, take parenting classes, obtain a substance abuse assessment and follow all recommendations, submit to random drug tests, participate in counseling to learn how to address her substance-abuse issues and avoid relationships involving domestic violence, and participate in domestic violence counseling.

The caseworker testified that Mother had not complied with most of these requirements by the time of trial. Mother did not stay in regular contact with the Department and provided proof of employment for only a single month. At the time of trial, Mother had not informed the Department of her income or her residence, and the caseworker was unable to determine if Mother had a suitable home. Mother tested for drugs only once—the month before trial—and the sample was positive for a high dose of methamphetamine. And it was not until two months before trial that Mother completed the required parenting class and domestic violence class. On the other hand, the caseworker testified that the Department has no concerns with Grandmother.

The district court subsequently signed a judgment appointing Grandmother as managing conservator and Mother as possessory conservator.[3] The final judgment provides that Mother has supervised visitation with Child on the second and fourth Saturday of each month between 11:00 and 5:00 PM. If she has two clean hair follicle drug tests—one no earlier than May 1, 2024, and the second no earlier than August 1, 2024—she will have unsupervised visitation during the same time periods. Mother timely appealed.

---

[3] The district court also appointed Child's father as possessory conservator. He did not appeal.

3

**DISCUSSION**

Mother argues in two issues that the district court erred by declining to appoint Mother as managing conservator and by departing from the standard possession order.[4]

**Standard of Review**

We review issues related to conservatorship for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). A trial court abuses its discretion when it rules arbitrarily, unreasonably, without regard for guiding rules or principles, or without supporting evidence. *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021).

In this context, legal and factual sufficiency are not independent grounds of error but are factors used to determine whether the trial court abused its discretion. *A.S. v. Texas Dep't of Fam. & Protective Servs.*, 665 S.W.3d 786, 795 (Tex. App.—Austin 2023, no pet.). Under this standard, we determine "whether the trial court had sufficient information on which to exercise its discretion and, if so, whether the trial court erred in its application of discretion." *Id.* We employ traditional sufficiency review to answer the first question. *Id.* If the evidence is sufficient, we "determine whether, based on the evidence, the trial court made a reasonable

---

[4] The Department argues that Mother waived these issues because she agreed to the district court entering this judgment. *See Guzzetta v. Brimhall LQ, LLC*, 678 S.W.3d 251, 258 (Tex. App.—San Antonio 2023, no pet.) ("A party's consent to the trial court's entry of judgment waives any error, except for fundamental error, contained in the judgment, and that party has nothing to properly present for appellate review."). While Mother's appointed counsel stated on the record that she had no objection and would recommend that Mother agree, Mother was not present at the hearing. Under these circumstances, we decline to conclude that Mother has waived her challenge to the judgment. *See C.C. v. Texas Dep't of Fam. & Protective Servs.*, 653 S.W.3d 204, 216 (Tex. App.—Austin 2022, no pet.) (observing that "termination proceedings should be strictly scrutinized" (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985))); *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018) ("Constitutional imperatives favor the determination of cases on their merits rather than on harmless procedural defaults." (citing *Marino v. King*, 355 S.W.3d 629, 634 (Tex. 2011) (per curiam))).

decision, that is, that the court's decision was neither arbitrary nor unreasonable." *Id.* (citing *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied)).

When reviewing a legal-sufficiency challenge, "we view the evidence in the light most favorable to the verdict, crediting favorable evidence when reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not." *Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 794 (Tex. 2020). Evidence is legally insufficient when (1) evidence of a vital fact is absent, (2) rules of law or evidence bar us from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id*.

In reviewing for factual sufficiency, "we examine the entire record and consider and weigh all the evidence, both in support of and contrary to the challenged finding." *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). When a party attacks the factual sufficiency of an adverse finding on which it did not bear the burden of proof, we will set it aside only if the supporting evidence "is so weak as to make the verdict clearly wrong and manifestly unjust." *City of Austin v. Chandler*, 428 S.W.3d 398, 407 (Tex. App.—Austin 2014, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

**Conservatorship**

Mother first argues that the district court abused its discretion by declining to appoint her as managing conservator without sufficient evidence that appointing her would harm Child's development.

The "best interest of the child" is always the "primary consideration" in conservatorship decisions. Tex. Fam. Code § 153.002. There is a rebuttable presumption that appointment of a parent as managing conservator is in the best interest of the child. *Id*. § 153.131(b). Specifically, a parent must be appointed managing conservator unless the court determines "that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." *Id*. § 153.131(a).

Generally, evidence of a parent's specific acts or omissions "that demonstrate an award of custody to the parent would result in physical or emotional harm to the child" is sufficient proof to rebut the parental presumption. *V.M. v. Texas Dep't of Fam. & Protective Servs.*, 681 S.W.3d 465, 473 (Tex. App.—Austin 2023, no pet.) (citing *A.S.*, 665 S.W.3d at 796). The evidence, however, "must go beyond raising the 'mere potential threat' of harm." *Id.* (quoting *In re B.B.M.*, 291 S.W.3d 463, 467 (Tex. App.—Dallas 2009, pet. denied)). Types of parental conduct that may constitute significant impairment include, but are not limited to, "severe neglect, drug abuse, parental irresponsibility, bad judgment, and history of mental disorders." *J.H. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00162-CV, 2021 WL 2834719, at *4 (Tex. App.—Austin July 8, 2021, no pet.) (mem. op.) (citing *In re S.T.*, 508 S.W.3d 482, 492 (Tex. App.—Fort Worth 2015, no pet.)). The nonparent has the burden to rebut the parental presumption by a preponderance of the evidence. *V.M.*, 681 S.W.3d at 473.

Mother argues that the Department failed to carry its burden because it presented evidence of a "single positive drug test" and that she did not complete every requirement of her service plan. But the evidence shows more than an isolated failure by Mother to avoid using drugs. Even though Mother's service plan required her to participate in frequent, random drug

testing and expressly states that a missed test "will be considered a positive," Mother did not test until the month prior to trial. The district court could reasonably infer from her failure to test—and from her single drug test that was positive for methamphetamine—that Mother used drugs throughout the case. *See A.S.*, 665 S.W.3d at 797 ("[I]t is well-established that a parent's failure or refusal to take drug tests supports an inference by the factfinder that the parent was using drugs."). And the fact that she used methamphetamine so close to what she thought would be the final hearing on what was then the Department's petition to terminate her rights is evidence that she is unable to provide Child with a safe environment. *See A.B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-23-00054-CV, 2023 WL 4424848, at *3 (Tex. App.—Austin July 11, 2023, no pet.) (mem. op.) (explaining that "evidence of continued illegal drug use by parent, 'knowing her parental rights were in jeopardy, supports the conclusion that she is not willing or able to provide the child with a safe environment'" (quoting *J.G. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00790-CV, 2023 WL 3634364, at *8 (Tex. App.—Austin May 25, 2023, no pet.) (mem. op.))). Mother's failure to provide the Department with information about employment, income, and whether she possessed a stable and appropriate residence for Child further supports that conclusion.[5] *See* Tex. Fam. Code § 263.307(a) ("[T]he

---

[5] Mother's service plan required her to take these steps, and she now argues that her failure to satisfy all the requirements of her service plan should not automatically count against her. She cites *In re R.J.G.*, which concerned termination of parental rights for noncompliance with a service plan. 681 S.W.3d 370, 373 (Tex. 2023); *see* Tex. Fam. Code § 161.001(b)(1)(O) (authorizing termination if parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child"). The supreme court held that trial courts "should not reflexively order termination when the evidence demonstrates noncompliance with a plan requirement" but "should consider whether the nature and degree of the asserted noncompliance justifies termination under the totality of the circumstances." *In re R.J.G.*, 681 S.W.3d at 373–74. Assuming that the court's holding in *In re R.J.G.* has applicability here, the "nature and degree" of Mother's noncompliance with her service plan, particularly her failure to drug test, supports the district court's judgment.

prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."). Applying the appropriate standards of review, we conclude there is legally and factually sufficient evidence to support a finding that the Department rebutted the parental presumption by showing that appointing Mother as managing conservator of Child would endanger the child's "physical health or emotional development." *See* Tex. Fam. Code § 153.131(a). We therefore cannot say the district court abused its discretion by declining to appoint Mother as managing conservator.[6]

**Standard Possession Order**

Mother argues in her second issue that the district court abused its discretion by deviating from the standard possession order.

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." *Id.* § 153.002. There is a rebuttable presumption that the standard possession order "provides reasonable minimum possession of a child for a parent named as a possessory conservator or joint managing conservator" and "is in the best interest of the child." *Id.* § 153.252. The court may deviate from the standard possession order if necessary for the child's best interest. *See id.* § 153.256; *In re K.S.*, 492 S.W.3d 419, 429 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). In deciding whether to depart the standard possession order, the trial court must consider "the age, developmental status, circumstances, needs, and best interest of the child"; "the

---

[6] Mother does not separately argue that declining to appoint her as managing conservator is not in L.J.V.'s best interest. *See V.M. v. Texas Dep't of Fam. & Protective Servs.*, 681 S.W.3d 465, 474–75 (Tex. App.—Austin 2023, no pet.) (separately addressing rebuttal of parental presumption and best interest).

8

circumstances of the managing conservator and of the parent named as a possessory conservator"; and "any other relevant factor." Tex. Fam. Code § 153.256.

Mother argues that the district court abused its discretion by reducing the number of her monthly visitations to two and requiring supervision for the visits.[7] But the record reflects concerns about whether Mother was stable enough to care for Child without supervision: there was no evidence about the state of her residence or whether she is employed; she tested positive for methamphetamine; and she failed to attend Child's doctor's appointments and medication reviews. The district court also provided for unsupervised visits if Mother has two clean hair follicle drug tests. Based on this record, we cannot conclude that the district court abused its discretion in limiting visitation and initially requiring supervision. *See id.* § 153.256 (permitting trial court to consider child's needs and circumstances of managing and possessory conservators); *King v. King*, No. 03-22-00329-CV, 2023 WL 3873496, at *11 (Tex. App.—Austin June 8, 2023, no pet.) (mem. op.) ("Supervised visitation is a reasonable condition to be ordered to address potential safety concerns."). We overrule Mother's second issue.

## CONCLUSION

We affirm the district court's judgment.

---

[7] The standard possession order generally provides that the possessory conservator has the right to possession on weekends starting the first, third, and fifth Friday of each month and Thursday nights during the school year. Tex. Fam. Code § 153.312(a).

_____

                Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Smith and Theofanis

Affirmed

Filed:   August 15, 2024